United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOSE ELIAS MORALES AGUIRRE,

Plaintiff,

v.

AMERICAN HONDA MOTOR
CORPORATION, INC.,

Defendant.

Case No.  22-cv-06909-CRB

**ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO
DISMISS**

Plaintiff Jose Elias Morales Aguirre ("Aguirre") brings a consumer class action lawsuit against American Honda Motor Corporation, Inc., ("AHM"), alleging that AHM violated 13 C.C.R. §§ 2035–2046 (the "California Emissions Warranty") by not warranting the head gasket on its Partial Zero Emissions Vehicles and Super Ultra Low Emissions Vehicles ("Class Vehicles").  See First Amended Complaint ("FAC") (dkt. 22) ¶ 1. Aguirre alleges that the head gasket is an "emissions-related" part that AHM must cover under the warranty, and that AHM's failure to do so is an unfair and unlawful business practice pursuant to California Business and Professions Code § 17200 ("UCL").  See FAC ¶¶ 2–3.  In the instant motion, AHM moves to dismiss the complaint in its entirety. See Second Motion to Dismiss ("MTD") (dkt. 23).

## I.    BACKGROUND

To provide context for Aguirre's allegations, this section describes the relevant regulatory framework, an overview of the diagnostic systems that monitor emissions performance, and the specific facts as alleged in the complaint.

United States District Court
Northern District of California

### A.     The California Emissions Warranty

California Health and Safety Code § 43200 authorized the California Air Resources Board ("CARB") to promulgate regulations for vehicle emissions, including the California Emissions Warranty.  See FAC ¶ 11.  The warranty consists of two parts: the Defects Warranty and the Performance Warranty.[1]  The Defects Warranty provides that

> [t]he manufacturer of each motor vehicle or motor vehicle engine shall warrant to the ultimate purchaser and each subsequent purchaser that the vehicle or engine is:
>
> (1) Designed, built, and equipped so as to conform with all applicable regulations adopted by the Air Resources Board pursuant to its authority in chapter 1 and 2, part 5, division 26 of the Health and Safety Code; and
>
> (2) Free from defects in materials and workmanship which cause the failure of a warranted part to be identical in all material respects to the part as described in the vehicle or engine manufacturer's application for certification, including any defect in materials or workmanship which would cause the vehicle's on-board diagnostic malfunction indicator light [("check engine light")] to illuminate.

13 C.C.R. § 2037(b)(1)–(2). The Performance Warranty states that the vehicle or engine is:

> (1) Designed, built, and equipped so as to conform with all applicable regulations adopted by the Air Resources Board pursuant to its authority in chapters 1 and 2, part 5, division 26 of the Health and Safety Code; and
>
> (2)  Will, for a period of three years or 50,000 miles, whichever first occurs, pass an inspection established under section 44012 of the Health and Safety Code ("[smog] inspection").

Id. § 2038(b)(1)–(2).

The California Emissions Warranty further provides that—beginning with 1990 and

---

[1] Hereinafter, this Order will refer to both sections generally as the "California Emissions Warranty" unless it is necessary to distinguish between the two, then ("Defects Warranty") and ("Performance Warranty").

newer model passenger cars, light-duty trucks, and medium-duty vehicles—warranted parts will be covered for three years or 50,000 miles, whichever occurs first.  See id. § 2037(b)(2).  For "high-priced" warranted parts, the warranty period is extended to seven years or 70,000 miles, whichever occurs first.[2]  See id. § 2037(b)(3).  For Partial Zero Emissions Vehicles ("PZEV") and Super Ultra Low Emissions Vehicles ("SULEV") which meet more stringent emission standards, the California Emissions Warranty extends to fifteen years or 150,000 miles, whichever occurs first.  See id. § 1962.2(c)(2)(D).

Under the California Emissions Warranty, for 1990 or newer model cars, a warranted part includes "any part installed on a motor vehicle or motor vehicle engine by the vehicle or engine manufacturer, or installed in a warranty repair, which affects any regulated emission from a motor vehicle or engine which is subject to California emission standards."[3]  See id. § 2035(c)(3)(B) (emphasis added); FAC ¶ 14.  Any automotive part that "affects any regulated emissions from a motor vehicle which is subject to California or federal emission standards" is an "emissions-related part."  See 13 C.C.R. § 1900(b)(3); FAC ¶ 15.  CARB adopted an Emissions-Related Parts List ("CARB's Parts List") that provides examples of emission-related parts that a vehicle manufacturer must cover under the California Emissions Warranty.[4]  See 13 C.C.R. § 1900(b)(3); FAC ¶ 17.  However, CARB's Parts List is not exhaustive.  Vehicle manufacturers must warrant any part that "affects any regulated emission."  See FAC ¶ 19.  During a new vehicle model's certification by CARB, a vehicle manufacturer must identify in its application all parts that "affect regulated emissions" and any "high-priced warranted parts."  See 13 C.C.R. § 2037(c)(1)(B).  CARB reviews and approves this application, which solidifies a vehicle's

---

[2] The California Emissions Warranty defines a high-priced part as an emissions-related warranted part whose replacement cost at the time of certification exceeds the cost limit set forth by a formula in the regulations.  See id. § 2037(c)(1)(B).  Should the price of repair or replacement exceed the cost limit, a vehicle manufacturer must cover the part under the extended seven year or 70,000-mile warranty.  See id. § 2037(b)(3); FAC ¶¶ 31–36.

[3] A regulated emission refers to any greenhouse gas emission subject to the California emission standards, including carbon dioxide.  See FAC ¶ 16.

[4] CARB published the Emissions-Related Parts List on, or about November 4, 1977, and amended in November 1981, and again in June 1990.  See FAC ¶ 52.

United States District Court
Northern District of California

California Emissions Warranty coverage.  See 13 C.C.R. § 2037(g); FAC ¶ 55.

### B.    The OBD II Systems and Check Engine Light

To assist in the detection of a potential emissions-related part defect or malfunction, every vehicle manufacturer must equip its vehicles with onboard diagnostic systems ("OBD II Systems").  See 13 C.C.R. § 1968.2.  The OBD II Systems "monitor emission systems in-use for the actual life of the vehicle and shall be capable of detecting malfunctions of the monitored emissions systems, illuminating a [check engine light] to notify the vehicle operator of detected malfunctions, and storing fault codes identifying the detected malfunctions."  Id. § 1968.2(a).  A fault code is a diagnostic tool that registers when the system's sensors initially detect or confirm a malfunction.  See id. § 1968.2(c); FAC ¶ 47.  The fault codes help technicians identify the vehicle's issue or defect, while the check engine light alerts drivers of a detected malfunction.  See FAC ¶ 48.  In their application for CARB's new vehicle certification, vehicle manufacturers must submit a document entitled "OBD2 Summary Tables" that "identify the Components/Systems monitored by OBDII [Systems], the acceptable ranges relating to the data gathered, the corresponding emissions fault codes and that the [check engine light] will be triggered when a defect is identified."  Id.

### C.    This Litigation

#### 1.    Plaintiff's Honda Accord

Aguirre purchased and registered a new 2020 Honda Accord Hybrid in California. See id. ¶ 58.  Aguirre's vehicle is a PZEV, covered by the extended fifteen year or 150,000 mile warranty.  See id. ¶¶ 39, 46, 58.  On approximately June 7, 2022, when there were 127,530 miles on the odometer, Aguirre's car began to malfunction.  See id. ¶ 59.  The check engine light illuminated, the car would not accelerate over 40 mph, and it had a "bad engine vibration."  Id. ¶ 60.  Aguirre brought the car to an authorized Honda repair facility in Dublin, CA, where the vehicle's OBDII systems registered three fault codes (P0300, P0302, and P0304).  See id.  The facility cleared the fault codes and added coolant to the vehicle.  See id.  The repair facility advised Aguirre that the car might have a coolant leak.

Aguirre paid $210.00 for the service.  See id. ¶¶ 60–61.

Approximately two days later, Aguirre returned to the same repair facility because the check engine light had illuminated again, and the engine continued to "run rough."  Id. ¶ 62.  During diagnostics, the OBDII system registered fault code P0302.  See id.  Based on that fault code, the technician found a blown head gasket that was causing coolant to leak into the combustion chamber.[5]  See id.  The facility replaced the head gasket and performed other necessary repairs and maintenance, which cost Aguirre $3,057.  See id. ¶¶ 62–63.  After Aguirre paid for the repairs, he retained counsel, who sent a letter to AHM requesting that AHM cover the head gasket repairs under the California Emissions Warranty because the head gasket is an emissions-related part.  See id. ¶ 64.  On July 15, 2022, AHM refused to do so, noting that the head gasket is not a "warranted part" covered by the California Emissions Warranty.  See id.

### 2. Procedural History

On November 4, 2022, Aguirre brought suit against AHM in connection with the head gasket dispute.  See Compl. (dkt.1).  On February 28, 2023, AHM moved to dismiss the complaint.  See First Mot. to Dismiss (dkt. 17).  On March 27, 2023, Aguirre amended the complaint, alleging that AHM must include the head gasket on its list of warranted parts submitted to CARB during vehicle certification.  See FAC ¶¶ 63, 67.  Aguirre alleges that AHM's failure to include the head gasket on the list was a deliberate choice, which AHM made in order to reduce its warranty liability under the California Emissions Warranty and therefore deprive consumers of a warranty to which they are entitled.[6]  See id. ¶ 67.  Aguirre argues that AHM's systematic evasion of the California Emissions Warranty supports a claim for unlawful and unfair business practices under the UCL.  See

---

[5] As alleged, the head gasket seals the mating surfaces between a cylinder head and an engine block.  The head gasket prevents the engine from losing compression and ensures that oil, coolant, and compressed fuel that run between the engine block and cylinder head do not leak.  See id. ¶¶ 69–73.

[6] The first complaint alleged two causes of action: (1) an unfair and unlawful business practice under the UCL; and (2) a violation of the California Consumer Legal Remedies Act ("CLRA").  See Compl. ¶¶ 29–35.  The FAC dropped the CLRA claim and proceeds on the remaining UCL claim.  See FAC ¶¶ 2–3.

United States District Court
Northern District of California

1  id. ¶ 65.

2      In the instant motion, AHM moves to dismiss the FAC and requests judicial notice.

3  See MTD at 3; Request for Judicial Notice (dkt. 24) ("Req.").  The motion is now fully

4  briefed.  See Opp'n (dkt. 25); Reply (dkt. 27).

## II.    LEGAL STANDARD

6      Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court may dismiss

7  a complaint for failure to state a claim upon which relief may be granted.  The Court may

8  base dismissal on either "the lack of a cognizable legal theory or the absence of sufficient

9  facts alleged under a cognizable legal theory."  Godecke v. Kinetic Concepts, Inc., 937

10  F.3d 1201, 1208 (9th Cir. 2019) (cleaned up).

11      A complaint must plead "sufficient factual matter, accepted as true, to state a claim

12  to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (cleaned

13  up).  A claim is plausible "when the plaintiff pleads factual content that allows the court to

14  draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

15  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

16  statements, do not suffice" to survive a 12(b)(6) motion.  Id. (citing Bell Atlantic v.

17  Twombly, 550 U.S. 544, 555 (2007)).  When evaluating a motion to dismiss, the Court

18  "must presume all factual allegations of the complaint to be true and draw all reasonable

19  inferences in favor of the nonmoving party."  Usher v. City of Los Angeles, 828 F.2d 556,

20  561 (9th Cir. 1987).  "Courts must consider the complaint in its entirety, as well as other

21  sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in

22  particular, documents incorporated into the complaint by reference, and matters of which a

23  court may take judicial notice."  Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308,

24  322 (2007).

25      If a court dismisses a complaint for failure to state a claim, it should "freely give

26  leave" to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A court may deny

27  leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant,

28  repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to

United States District Court
Northern District of California

1   the opposing party by virtue of allowance of the amendment, [and] futility of amendment."

2   Leadsinger, Inc. v. BMG Music Pub., 512 F.3d 522, 532 (9th Cir. 2008).

3   **III.    DISCUSSION**

4          AHM argues that the Court should dismiss the FAC because: (A) Aguirre fails to

5   sufficiently allege that the head gasket is an emissions-related part that AHM must cover

6   under the warranty; (B) Aguirre fails to plead an inadequate remedy at law and Article III

7   standing for injunctive relief; and (C) the doctrine of abstention and primary jurisdiction

8   preclude Aguirre's claims.  AHM's arguments are unpersuasive, save for AHM's

9   contention regarding Aguirre's Article III standing for injunctive relief.

10         **A.      Sufficiency of the Pleadings**

11         AHM argues that Aguirre's UCL claim fails because Aguirre has not sufficiently

12   alleged that the head gasket affects regulated emissions.  See MTD at 7.  Aguirre alleges

13   that the head gasket is an emissions-related part by: (1) articulating a causal theory of how

14   a defective head gasket causes increased emissions; (2) alleging that a head gasket is an

15   integral component of a part listed on CARB's Parts List; (3) averring that the illumination

16   of the check-engine light and the corresponding OBDII fault codes that register when a

17   malfunction is detected are per-se findings of "emissions-related" part defects; and (4)

18   alleging that the vehicle is covered under the Performance Warranty because a head gasket

19   defect causes a vehicle to fail a smog test. FAC ¶¶ 23–26, 69–91.  As discussed below, the

20   Court holds that Aguirre's allegations on this point are sufficient.

21         **1.      Causal Theory as to How the Head Gasket Affects Emissions**

22         For a head gasket to be an emissions-related part, it must "affect[] any regulated

23   emission from a motor vehicle or engine."  See id. ¶ 17.  AHM argues that Aguirre's

24   causal theory of how the head gasket affects regulated emissions is insufficient as it

25   militates that a vehicle manufacturer must warrant any part that could conceivably increase

26   greenhouse gas emissions.  See MTD at 7–9.  AHM asks the Court to reject this expansive

27   view of the warranty because there is no limiting principle in such an "attenuated chain of

28   indirect causation involving multiple components."  Id. at 7.  This argument

United States District Court
Northern District of California

mischaracterizes Aguirre's allegations.  Aguirre offers a specific causal theory that articulates how the head gasket is an emissions-related part.

Specifically, Aguirre alleges that when the head gasket fails to work properly, it results in a loss of compression in the cylinders.  See FAC ¶¶ 72–74.  In turn,

> [a] loss of compression due to a failed head gasket [] results in engine misfires, failure to burn all of the fuel that is introduced into the combustion chamber and a loss of engine power, increas[ing] regulated emissions because the burned fuel is released as carbon dioxide and will result in the illumination of a check engine light.

> Additionally . . . oil and coolant from the oilways and waterways can travel along the mating surface where the defective gasket is providing an imperfect seal and enter the cylinders. . . This results in engine misfires, failure to burn all of the fuel that is introduced into the combustion chambers, combustion of coolant, combustion of oil, and a loss of engine power, all of which increase regulated emissions and result in the illumination of a check engine light.

Id. ¶¶ 74–75.  Aguirre further alleges that the OBDII fault codes detected by the vehicle

> indicate that the vehicle was misfiring.  Misfiring occurs when one or more cylinders do not produce power.  As Plaintiff's vehicle was misfiring, fuel was still being introduced into the cylinders.  This means that some of the fuel being introduced into the engine was not properly igniting, thus not producing power, and was being wasted.  This wasted fuel is emitted into the atmosphere through the exhaust, increasing regulated emissions.

Id. ¶ 76.  Aguirre thus alleges a distinct automotive process that illustrates how the head gasket affects regulated emissions from a motor vehicle.

To support its position, AHM relies on two district court cases granting a motion to dismiss because the plaintiff's causal theory of how the part in question affected regulated emissions was too attenuated and risked deeming every vehicle part to be "emissions related."  See MTD at 7–9 (citing Velasco v. Chrysler Grp. LLC, No. CV 13-08080-DDP,

8

1    2014 WL 4187796 (C.D. Cal. Aug. 22, 2014); Ferry v. Porsche Cars N. Am., Inc., No. CV

2    21-5715-GW, 2022 WL 1769120 (C.D. Cal. Mar. 11, 2022)).  Both cases are

3    distinguishable.

4         In Velasco, plaintiffs brought a claim alleging that the Total Integrated Power

5    Module ("TIPM"), a software module that controls the vehicle's electrical systems, was

6    emissions related because it "affects or controls other vehicle components" including

7    emission-related parts contained within CARB's Parts List.  2014 WL 4187796, at *13.

8    The court rejected this argument because plaintiff's interpretation of the statute would

9    sweep in a multitude of parts that have only an indirect effect on emissions.  See id.

10   Because no evidence suggested that CARB intended this broad interpretation and "in the

11   absence of any logical limiting principle," the court found this construction of "emissions

12   related" to be untenable.  Id.  Here, Aguirre alleges far more.  Rather than simply

13   contending that a head gasket affects other components that are emissions related, Aguirre

14   provides a clear and specific causal theory as to how the head gasket directly affects

15   regulated emissions.  See FAC ¶¶ 74–76.

16        In Ferry, plaintiffs alleged that the coolant pump was an emissions-related part that

17   should be covered by the California Emissions Warranty.  See Ferry, 2022 WL 1769120,

18   at *1.  Plaintiffs averred that when the coolant pump does not function properly, "leaking

19   coolant, and not pumping coolant at the proper pressure [increases] greenhouse gas

20   emissions."  Id. at *3.  The court deemed these allegations, absent "any determination by

21   any vehicle or engine manufacturer, or any regulatory body such as the governing

22   California Air Resources Board . . . that identifies a coolant pump (or any meaningfully-

23   similar part) as the type of part that 'affects any regulated emission,'" insufficient to

24   survive a motion to dismiss.  Id.  Aguirre's allegations are distinguishable from Ferry, as

25   Aguirre supports his causal theory with determinations by other vehicle manufacturers that

26   the head gasket is emissions related.[7]  And unlike the plaintiff in Ferry, Aguirre provides

27

28   [7] Unlike the Plaintiff in Ferry, Aguirre alleges that other automobile manufacturers cover the head
     gasket under the California Emissions Warranty, including 2023 Jeep vehicles, 2022 Hyundai

1   detailed allegations as to the vehicle's mechanical operation and the head gasket's

2   relationships to CARB's Parts List, bolstering the plausibility of his allegations.  See FAC

3   ¶¶ 74–76; infra III(A)(2).

4          Aguirre also presents a more direct causal theory than other cases in which courts

5   denied a motion to dismiss on these grounds.  In Hazdovac, plaintiffs alleged that a

6   defective coolant pump causes an engine to overheat, which will lead to a broken head

7   gasket, which will cause coolant and oil to leak and combust, which increases regulated

8   emissions.  See Hazdovac v. Mercedes-Benz USA, LLC, No. 20-cv-00377-RS, 2020 WL

9   12044146, at *4 (N.D. Cal. Sept. 16, 2020) ("Hazdovac I").  Judge Seeborg cautioned that

> such chain-of-event theories on the inner workings of the
> interdependent modern automobile, offered without
> accompanying statistics or concurring authority, risk stretching
> the CCR's "emissions-related" mandate to cover the whole
> machine, tip to tail.  Crucially, though, the task of confronting
> that risk stands apart from the work of testing Hazdovac's
> complaint.  This is, from a procedural standpoint, a feature, not
> a bug . . . . [and] while Hazdovac's averments on this front are
> by no means airtight, for the moment they pass muster.

17  Id.  Aguirre articulates a more direct causal link between the head gasket and the vehicle's

18  increased emissions output, as Aguirre does not depend upon other component failures that

19  lead to a broken head gasket.  See FAC ¶¶ 74–76.  Because of this, Judge Seeborg's

20  concern of stretching the warranty beyond its intended purpose is less salient here.

21         In addition, determining whether the head gasket is an "emissions-related" part and

22  whether the causal chain is too attenuated requires factual determinations that are best

23  resolved during summary judgment or at trial.  See Martin v. Ford Motor Co., No. CV 20-

24  10365-DMG, 2022 WL 2062470, at *3 (C.D. Cal. Feb. 17, 2022) ("Ultimately, the Court

25  will be called upon to interpret the scope of the Emissions Warranty and whether the [part]

26  falls within it.  But it would be premature to do so now because just how directly the [part]

27

28  _____

vehicles, 2023 Kia vehicles, and the 2023 Fiat 500X.  See FAC ¶¶ 83–88.

United States District Court
Northern District of California

affects emissions involves too many factual questions."); <u>Gibson v. Jaguar Land Rover N. Am.,</u> LLC, No. CV 20-00769-CJC, 2020 WL 5492990, at *3 (C.D. Cal. Sept. 9, 2020) ("The Court may determine at summary judgment, or a jury may determine at trial, that there is sufficient evidence to show that [defendant's] decision not to include the in-tank fuel pump as a high-priced warranted part did not violate the law, but dismissal is not appropriate at this early stage."). While Aguirre's allegations are by no means dispositive, Aguirre's theory plausibly alleges that the head gasket affects regulated emissions so as to fall within the scope of the California Emissions Warranty, and that is sufficient.

### 2.    CARB's Emissions-Related Parts List[8]

Section 1900(b)(3) requires that, at a minimum, a vehicle manufacturer warrant any "parts specified in the 'Emissions-Related Parts List.'" 13 C.C.R. § 1900(b)(3). Aguirre's second basis for asserting that the head gasket is an emissions-related part is that CARB's Parts List implicitly includes the head gasket. <u>See</u> FAC ¶¶ 79–82. AHM argues that Aguirre's reliance on CARB's Parts List is flawed for two reasons: (1) the head gasket is not explicitly listed; and (2) Aguirre's "expansive" interpretation of CARB's Parts List is unsubstantiated. <u>See</u> MTD at 12–13; Reply at 7. AHM's argument is unpersuasive.

Aguirre alleges that the head gasket is a part contained within the car's combustion chamber, and that the combustion chamber is listed on CARB's Parts List. <u>See</u> FAC ¶ 80–81. Aguirre describes how

> the head gasket is an integral emissions related component of the engine, used in the operation of the piston and combustion chamber system, which provides a matting of the cylinder head to the cylinders. The head gasket's function is to provide a seal for the oilways, the waterways, and the cylinders. The failure of these head gasket functions increases regulated emissions.

---

[8] AHM requests judicial notice of Exhibit 1: Appendix B to the California Code of Regulations Title 13, Division 3, Chapter 13, Article 1 (CARB's "Emissions-Related Parts List" or "Exhibit 1"). <u>See</u> Req. at 2. The Court grants judicial notice of Exhibit 1 as Aguirre extensively references this list in the complaint. <u>See</u> FAC ¶¶ 17–19, 25, 42, 52–54, 79–82; <u>Khoja v. Orexigen Therapeutics, Inc.,</u> 899 F.3d 988, 1002 (9th Cir. 2018) (allowing a document to be incorporated by reference "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim") (quoting <u>U.S. v. Ritchie,</u> 342 F.3d 903, 908 (9th Cir. 2003)).

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

Id. ¶ 81.  While not dispositive, Aguirre's allegations that the head gasket is an integral part of something that is covered by the warranty, combined with other factual allegations, helps move his legal theory from conceivable to plausible.

CARB's Parts List also includes a section for all "miscellaneous items used in [the enumerated] systems."  Req. Ex. 1; FAC ¶ 82.  Aguirre alleges that the head gasket is a miscellaneous item used in the combustion chamber and thus, is an emissions-related, warranted part.  See FAC ¶ 82.  AHM notes that CARB's Parts List specifies two categories of miscellaneous parts including (1) hoses, clamps, and pipers; and (2) pulleys, belts, and idlers.  See MTD at 13.   It does not mention gaskets.  Because CARB's Parts List is not exhaustive but rather "a list of components [that] are examples of emission related parts," Req. Ex. 1 at 1, it leaves open the possibility that a head gasket is covered by the warranty.  Accordingly, while Aguirre's allegations as to CARB's Parts List are insufficient on their own, they bolster his contention that the head gasket affects regulated emissions.

### 3.    Check Engine Light and OBDII Fault Codes[9]

Aguirre's third basis for asserting that the head gasket is an emissions-related part is by alleging that "[w]hen a defect triggers a fault code monitored by the OBDII system and the [check engine light] illuminates, that is confirmation that the defect is 'emissions-related' . . . [and therefore] the repair must be performed under the California Emissions Warranty."  FAC ¶ 24.  AHM argues that "the potential to trigger a check engine light defines what type of defect is sufficient to require warranty coverage for a warranted part. It does not define [as Aguirre alleges] what constitutes a warranted part in the first

---

[9] AHM requests judicial notice of Exhibit 2: The Manufacturers Advisory Correspondence ("MAC") 2016-01 issue by CARB on March 15, 2016 ("Exhibit 2").  See Req. at 2.  The Court grants judicial notice of Exhibit 2.  "The court may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); see also Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.").

place."[10] [11]  MTD at 11.

Courts have suggested that the illumination of the check engine light as an indicator of a per-se emissions-related defect is suspect.  See, e.g., De Anda v. Ford Motor Co., No. 22-cv-04064-ODW, 2023 WL 2787950, at *6 n.5 (C.D. Cal. Apr. 5, 2023) ("[T]he Court need not decide [that a vehicle part is warranted solely because the check engine light illuminates] because it finds that De Anda plausibly alleges that the transmission and its components affect emissions beyond solely triggering a [check engine] light to illuminate."); Martin, 2022 WL 2062470, at *3 n.5 ("Although the regulations require coverage when a defect in an emissions-related part causes the check-engine light to illuminate, that does not mean that any defect that triggers the light is emissions-related."); Hazdovac I, 2020 WL 12044146, *4 n.7 ("While Title 13 instructs manufacturers to warrant 'emissions-related' parts against 'any defect . . . which would cause the vehicle's [check engine light] to illuminate,' it plainly does not command them to provide . . . coverage for every problem bringing about the same result.") (quoting 13 C.C.R. § 2037(b)(2)) (clarifying this statement as dicta and not law of the case in Hazdovac v. Mercedes-Benz USA, LLC, No. 20-cv-00377-RS, 2022 WL 123852, at *4 (N.D. Cal. Jan. 13, 2020) ("Hazdovac II")).

While Aguirre's allegations about the check engine light are insufficient on their

---

[10] AHM argues that "legal opinions in the form of declarations are improper and cannot be considered" because it "supplant[s] a process entrusted to CARB through a detailed regulatory framework."  MTD at 11.  Generally, "[a]n opinion is not objectionable just because it embraces an ultimate issue."  Fed. R. Evid. 704(a).  "That said, an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law."  Nationwide Transp. Fin. v. Cass Info. Sys., Inc., 523 F.3d 1051, 1058 (9th Cir. 2008) (citation omitted).  Nowhere in the complaint does the cited declaration discuss legal explanations or conclusions related to the legal question here.

[11] The MAC proposed for notice by the defendant and the CARB declaration referenced in the complaint both clarify that "[e]missions-related parts include any components that can illuminate the [check engine light] in the event of a malfunction, even if the primary function of the component is not emission control."  See Req. Ex. 2 at 6; FAC ¶ 41.  This definition may provide further support that the head gasket is an emissions-related part.  However, the MAC also states that "[m]anufacturers are not obligated to warrant non-emissions-related failures of these components under the emission control warranties, but emissions-related failures must be warranted."  Req. Ex. 2 at 6. Aguirre does not define an "emissions-related failure" to provide clarification on this point.

1   own, other factual allegations render Aguirre's allegations adequately plead.

2      **4.  Smog Test**

3      Aguirre's fourth basis for asserting that AHM must cover the head gasket under the

4   California Emissions Warranty is that a head gasket defect would cause a vehicle to fail a

5   smog test.  See FAC ¶¶ 90–91.  AHM argues that Aguirre's smog check allegations are

6   insufficient because Aguirre did not allege a smog check failure, nor does a smog check

7   failure indicate a per-se emissions-related defect.  See MTD at 13.  AHM contends that

8   "actual failure of a smog check . . . merely imposes a duty to inspect to determine if that

9   warranty coverage applies" as described in section 2037(h) of the California Emissions

10  Warranty.  Id.  This argument sidesteps Aguirre's allegations.

11     Aguirre alleges that OBDII fault codes P0300, P0302, and P0304 indicate that the

12  vehicle will not "perform[] in a manner which conforms with all applicable regulations"

13  required by the Performance Warranty.  See FAC ¶¶ 90–91.  To support its contention that

14  a smog check failure only imposes a duty to inspect, AHM cites to the Defect Warranty

15  rather than the Performance Warranty.  See MTD at 13 (citing 13 C.C.R. § 2037(h)).

16  Section 2037(h) specifically applies to vehicles that have failed a smog check after the

17  three-year or 50,000 mile warranty period expires, but before the seven-year or 70,000

18  mile warranty period expires.  This scenario does not apply here.  Furthermore, Aguirre

19  alleges that when his car registered the OBDII fault codes, it would have failed a smog

20  test, which indicates that the car does not perform in a manner that conforms to applicable

21  regulations as required by the Performance Warranty.  See FAC ¶ 90.  The Performance

22  Warranty does not explicitly state that a vehicle must fail a smog check for warranty

23  coverage to apply.  Because the Court must draw all inferences in the non-moving party's

24  favor, these allegations bolster Aguirre's claim for relief.

25     In sum, Aguirre sufficiently alleges a plausible claim for relief by articulating a

26  direct causal theory as to how the head gasket is an emissions-related part that AHM must

27  warrant.  Aguirre's allegations as to CARB's Parts List, the OBDII fault codes and

28  corresponding check engine light, and the smog test, while insufficient on their own,

United States District Court
Northern District of California

1   support the theory that the head gasket affects regulated emissions.

2         **B.**    **Adequate Remedy at Law**

3         AHM argues that even if the pleadings are sufficient, the Court must dismiss part or

4   all of the complaint for two reasons: (1) Aguirre fails to plead that he lacks an adequate

5   remedy at law to justify the Court's equitable jurisdiction; and (2) Aguirre fails to plead

6   Article III standing to support injunctive relief, and therefore can only seek restitution

7   under the UCL.  See MTD at 13–17.

8              **1.**     **Equitable Jurisdiction**

9         Aguirre seeks equitable relief in the form of injunctive relief and restitution.  See

10  FAC ¶ 154(a)–(m).  AHM argues that the Court should dismiss Aguirre's claim for

11  equitable relief pursuant to Sonner v. Premier Nutrition Corp., 971 F.3d 834, 844 (9th Cir.

12  2020), because Aguirre fails to plausibly allege an inadequate remedy at law.  See MTD at

13  13.  In Sonner, the Ninth Circuit held that a plaintiff "must establish that she lacks an

14  adequate remedy at law before securing equitable restitution for past harm under the

15  UCL."  971 F.3d at 844.  Because the complaint in that case did not allege that the plaintiff

16  lacked an adequate legal remedy, and the plaintiff conceded that she sought the same

17  amount of money in restitution that she did in damages, the district court correctly

18  dismissed the claims for restitution under the UCL.  Id.

19        In Guzman, the Ninth Circuit clarified that "Sonner's holding applies to equitable

20  UCL claims when there is a viable CLRA damages claim, regardless of whether the

21  plaintiff has tried to avoid the bar to equitable jurisdiction through gamesmanship."

22  Guzman v. Polaris Indus. Inc., 49 F.4th 1308, 1313 (9th Cir. 2022).  There, the plaintiff

23  could not pursue his time-barred CLRA damages claim, yet the court found the time-

24  barred claim was an adequate remedy at law that precluded him from pursuing a UCL

25  claim in federal court.  See id. at 1312.

26        Prior to Guzman, a number of district court cases concluded that Sonner has

27  minimal application at the pleading stage.  See, e.g., McKinney v. Corsair Gaming, Inc.,

28  No. 22-CV-00312-CRB, 2022 WL 2820097, at *10 (N.D. Cal. July 19, 2022) ("Although

Plaintiffs can pursue equitable claims in the alternative to legal remedies, they are still required to explain how, or plead that, the legal remedies are inadequate.") (citing Sonner, 971 F.3d at 844); Jeong v. Nexo Fin. LLC, No. 21-cv-02392-BLF, 2022 WL 174236, at *27 (N.D. Cal Jan. 19, 2022) ("Accordingly, Sonner provides limited guidance for pleading claims for legal and equitable relief.  Therefore, the Court is more inclined to agree with those courts that do not consider Sonner to impose strict requirements at the pleading stage."); Johnson v. Trumpet Behavioral Health, LLC, No. 21-cv-03221-WHO, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022) (explaining that "if a plaintiff pleads that she lacks an adequate legal remedy, Sonner will rarely (if ever) require more this early in the case."); Anderson v. Apple Inc., 500 F.Supp.3d 993, 1009 (N.D. Cal. Nov. 16, 2020) ("Under Sonner, the plaintiffs are required, at a minimum, to plead that they lack an adequate remedy at law, which they have not done.").

Even after the Ninth Circuit's decision in Guzman clarifying that Sonner's reach extends beyond the limited circumstances of a plaintiff strategically dismissing legal claims on the eve of trial, district courts remain split as to its applicability.  See, e.g., Regueiro v. FCA US, LLC, No. 22-cv-05521-SPG, 2023 WL 3564761, at *9–10 (C.D. Cal. May 4, 2023) (holding that the complaint plausibly alleges an inadequate legal remedy because it "contains numerous allegations explaining why monetary relief would not fully compensate Plaintiff's or the Class'[s] injuries."); Rodriguez v. FCA US LLC, No. 22-cv-01445-FWS, 2023 WL 3150075, at *4 (C.D. Cal. Mar. 21, 2023) (asserting a single UCL claim without plausibly alleging they lack an inadequate remedy at law is insufficient to establish equitable jurisdiction); Smith v. Apple, Inc, No. 21-cv-09527-HSG, 2023 WL 2095914, at *3 (N.D. Cal. Feb. 17, 2023) (reading "Guzman's discussion of 'equitable jurisdiction' as precluding pleading equitable remedies in the alternative"); Carroll v. Myriad Genetics, Inc., No. 22-cv-00739-YGR, 2022 WL 16860013, at *6 (N.D. Cal. Nov. 9, 2022) ("[T]he Court finds that Guzman, which addresses a motion for summary judgment, does not require that this Court dismiss plaintiff's equitable claims at [the pleading] stage. . . . . This Court will not deprive plaintiffs of their claims without

United States District Court
Northern District of California

1    clearer direction from a higher court.").

2         The requirements for equitable jurisdiction at the pleading stage continue to evolve.

3    Guzman suggests that if an adequate remedy at law exists, even if the claims is barred or is

4    pleaded in the alternative, a federal court cannot exercise equitable jurisdiction.  See

5    Guzman, 49 F.4th at 1313.  However, the Court need not decide that issue now as Aguirre

6    pleads a single UCL claim for equitable relief and provides numerous allegations as to why

7    he lacks an adequate legal remedy.  See FAC ¶¶ 92–105.  First, Aguirre seeks declaratory

8    or injunctive relief to compel AHM to identify head gaskets in Class vehicles [as] covered

9    by the California Emission Warranty and provide coverage pursuant to that warranty.  See

10   id. ¶ 94.  Second, Aguirre alleges that damages are inadequate because AHM's unlawful

11   business practice of evading California Emissions Warranty requirements harms the

12   environment which "can never be fully remedied through damages . . . or make [Aguirre]

13   and the putative class whole."  Id. ¶¶ 95–97.  Third, by paying damages, AHM can

14   allegedly continue to shirk its legal responsibilities under the California Emissions

15   Warranty, which undermines the purpose of the warranty and will not persuade AHM to

16   cease its unlawful behavior.  See id. ¶¶ 98–99.  Lastly, damages do not ensure that AHM

17   will adequately warrant and repair the head gasket in the future.[12]  Id. ¶ 100.  Considering

18   these allegations, the Court holds that Aguirre plausibly alleges that he lacks an adequate

19   legal remedy necessary to move past the pleading stage.

20              **2.       Future Injunctive Relief**

21        AHM also argues that Aguirre fails to demonstrate Article III standing to pursue

22   future injunctive relief.  See MTD at 15.  To pursue a UCL claim in federal court, a

23   plaintiff must demonstrate Article III standing.  See Circle Click Media LLC v. Regus

24

25   _____

     [12] Aguirre also argues that equitable relief will force AHM to identify all emissions-related parts to
26   ensure proper coverage under the California Emissions Warranty.  See FAC ¶ 101.  The Court will
     determine the specific relief, if warranted, at a later stage.  See DZ Rsrv. V. Meta Platforms, Inc.,
27   No. 18-cv-04978-JD, 2022 WL 912890, at *10 (N.D. Cal. Mar. 29, 2022); see also B.K. by next
     friend Tinsley v. Snyder, 922 F.3d 957, 972 (9th Cir. 2019) ("A more specific injunction will
28   depend on further fact-finding and what claims the plaintiffs actually prove through further
     litigation.").

United States District Court
Northern District of California

Mgmt. Grp. LLC, No. 12-cv-04000-EMC, 2016 WL 3879028, at *4 (N.D. Cal. July 18, 2016); see also Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1021–22 (9th Cir. 2004).  To establish Article III standing, the plaintiff must suffer a personal, concrete injury that is actual and imminent; (2) fairly traceable to the defendant's unlawful conduct; and (3) redressable by a favorable judicial decision.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992).  A plaintiff must demonstrate standing for each form of requested relief.  See Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc., 528 U.S. 167, 185 (2000).  To pursue injunctive relief, a plaintiff must plead a "threat of injury [that is] actual and imminent, not conjectural or hypothetical."  Davidson v. Kimberly-Clark Corp., 889 F.3d 956, 967 (9th Cir. 2018) (internal quotation marks and citations omitted).  Past injuries are "evidence bearing on whether there is a real and immediate threat of repeated injury."  City of Los Angeles v. Lyons, 461 U.S. 95, 102, 103 (1983) (internal quotation marks and citations omitted).  But a plaintiff must demonstrate "a sufficient likelihood that he will again be wronged in a similar way" to be entitled to injunctive relief.  Id. at 111.

AHM argues that Aguirre fails to plead "actual or imminent" harm and "instead speculat[es] as to the possibility of future harm."  MTD at 16.  In addition, AHM argues that Aguirre fails to plead a personal injury required to seek injunctive relief.  See id. at 17 (citing Hodgers-Durgin v. de la Vina, 199 F.3d 1037, 1045 (9th Cir. 1999) (explaining that "injunctive relief is not available based on alleged injuries to unnamed members of a proposed class")); see also Hoffman v. Ford Motor Co., No. 20-cv-00846-JLS, 2021 WL 3265010, at *10 (C.D. Cal. Mar. 31, 2021) (finding allegations supporting injunctive relief insufficient where plaintiff alleges "threat of future injury to potential class members, not the named plaintiffs").

Aguirre makes several attempts to establish standing for injunctive relief.  First, he makes a cursory allegation that there is an imminent likelihood of future environmental harm because AHM's decision to flout the California Emission Warranty is continuous and ongoing.  See FAC ¶¶ 97, 107.  However, Aguirre repaired his vehicle's blown head

18

1   gasket, and so it is unclear how there is imminent future environmental harm.  Aguirre's

2   present allegation requires too many inferential steps to reach the conclusion that AHM's

3   decision not to warrant the head gasket when it is required to do so causes future

4   environmental harm.  At the motion hearing, Aguirre's counsel described a sequence of

5   events that could result in temporary and potentially on-going environmental harm, but

6   Aguirre failed to articulate these allegations sufficiently in the FAC.

7        Second, Aguirre alleges that future injunctive relief is necessary because "Plaintiff

8   would purchase Defendant's [vehicle] in the future; however, Plaintiff will not purchase

9   Defendant's [vehicle] again because Plaintiff is not able to rely on Defendant's California

10  Emissions Warranty in the future and so, Plaintiff will not purchase another of Defendant's

11  vehicles, although Plaintiff would want to." Id. ¶ 112.  While Aguirre's allegations closely

12  mirror the allegations in Davidson, they are distinguishable.  In Davidson, the plaintiff

13  brought several state law consumer fraud claims, alleging that the defendant falsely

14  represented their wipes as flushable. The plaintiff sought, inter alia, an injunction to cease

15  defendant's false advertising.  See Davidson, 889 F.3d at 961.  The Ninth Circuit held that

16  plaintiff had standing to pursue injunctive relief because plaintiff "faces a threat of

17  imminent or actual harm by not being able to rely on [defendant's] labels in the future, and

18  that this harm is sufficient to confer standing to seek injunctive relief."  Id. at 967.

19       Unlike the plaintiff in Davidson, who could not rely on defendant's advertising to

20  determine whether the wipes were truly flushable, Aguirre will be able to rely on AHM's

21  application for certification by CARB to determine whether AHM covers the head gasket

22  under the California Emissions Warranty.  See 13 C.C.R. § 2037(c)(1)(B).  In addition,

23  Aguirre fails to plead how his injury as a consumer is likely or imminent.  See Regueiro,

24  2023 WL 3564761, at *10 (finding harm is imminent when plaintiff alleges that they are in

25  the market to purchase another vehicle); De Anda, 2023 WL 2787950, at *8 (finding

26  plaintiff's injury was certainly impending because he cannot afford the repair so the car

27  continues to emit increased emissions and harm the environment).  Aguirre argues that in

28  addition to the head gasket, there are other emissions-related parts that AHM refuses to

identify and warrant under the California Emissions Warranty.  See FAC ¶ 109.  But Aguirre cannot ascertain standing based upon hypothetical injuries or conjecture that AHM is not comprehensively identifying all emissions-related parts.  See id.  This case only concerns a single car part: the head gasket.

AHM also argues persuasively that Aguirre has not sufficiently alleged that his head gasket is likely to fail again,[13] and if it does, that the warranty will still apply.  See MTD at 17.  When the head gasket failed one year ago, Aguirre had driven over 127,000 miles. FAC ¶ 59.  The warranty expires at 150,000 miles.  See 13 C.C.R. § 1962.2(c)(2)(D); FAC ¶ 39.  At the motion hearing, the Court asked Aguirre's counsel about the current mileage of Aguirre's Honda, and counsel responded that there are currently less than 150,000 miles on the car.  Based on counsel's response, the California Emissions Warranty still covers Aguirre's Honda—but Aguirre must also plausibly allege that a head gasket malfunction is likely or certainly impending.  Based on the FAC's allegations, Aguirre fails to sufficiently allege that his injury is personal and imminent to warrant Article III standing to be entitled to injunctive relief.  In light of Aguirre's counsel's representations at the motion hearing, the Court will give leave to amend to rectify the complaint's shortcomings.

### C.    Doctrines of Abstention and Primary Jurisdiction

AHM's final argument for dismissal is that this Court should apply the abstention doctrine, or in the alternative, primary jurisdiction, because "the administrative and regulatory matters [in this case] are not suited to judicial intervention."  MTD at 17.  While this Order analyzes the two points separately, the result is the same under both: the Court will keep the case.

### 1.    Abstention

Under the abstention doctrine, a court "may abstain when the lawsuit involves determining complex economic policy, which is best handled by the legislature or an administrative agency."  Alvarado v. Selma Convalescent Hosp., 153 Cal.App.4th 1292,

---

[13] See Martin, 2022 WL 2062470, at *5 ("The mere chance that the [part] may fail in the future, without more, is too speculative to provide standing for injunctive relief.").

United States District Court
Northern District of California

1298 (2007).  Abstention is also appropriate "where granting injunctive relief would be unnecessarily burdensome for the trial court to monitor and enforce given the availability of more effective means of redress."  Id.  And it is appropriate "when granting the requested relief would require a trial court to assume the functions of an administrative agency, or to interfere with the functions of an administrative agency."  Id.; see also Klein v. Chevron U.S.A., Inc., 202 Cal.App.4th 1342, 1366 (2012) (applying abstention doctrine where "plaintiffs had asserted claims that would necessarily require the trial court to resolve complex policy issues," and there is "an alternative mechanism for resolving the issues the plaintiffs had raised in their complaints.").  Where courts abstain, they are essentially saying that the entire matter should be heard by an agency.  See, e.g., Klein, 202 Cal.App.4th at 1362 (explaining that "a trial court may abstain from adjudicating a suit").

AHM argues that this Court should abstain from deciding whether AHM must warrant the head gasket as an emissions-related part.  See MTD at 18.  AHM insists that "[t]he court should not insert itself into a complex regulatory regime" and "assume the functions of an administrative agency."  Id. at 17–18 (quoting Alvarado, 153 Cal.App.4th at 1298).  Aguirre counters that "judicial abstention is inappropriate where, as here, the court is simply asked 'to perform an ordinary judicial function, namely, to grant relief under the UCL . . . for business practices that are made unlawful by statute,' and the court is 'merely being called upon to enforce those statutory prohibitions.'"  Opp'n at 6 (quoting Arce v. Kaiser Found. Health Plan, Inc., 181 Cal.App.4th 471, 495–96 (2010) (citations omitted)).

The Court agrees with Aguirre's assessment.  As Judge Seeborg articulated in Hazdovac III, plaintiff "seeks only a determination of whether [defendant] is complying with the law generally or flouting it systematically, using basic factfinding and statutory interpretation litigation tools.  Courts are well-suited for this task."  2022 WL 2161506, at *7; see also Regueiro, 2023 WL 3564761, at *6 ("Defendant points to no authority demonstrating that abstention is justified in this situation.  To the contrary, multiple courts

have rejected this argument in similar California Emissions Warranty putative class action cases."); <u>Ferry</u>, 2022 WL 1769120, at *6 (explaining "why [] requested relief would not convert the court into a quasi-CARB, or the enforcement arm thereof").  Determining whether the head gasket is an emission-related part will not require sifting through a complex regulatory scheme.  The Court is capable of adjudicating the questions in this case.

### 2. Primary Jurisdiction

AHM does not articulate why the Court should apply primary jurisdiction.  Primary jurisdiction "is a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decision-making responsibility should be performed by the relevant agency rather than the courts." <u>Syntek Semiconductor Co. v. Microchip Tech. Inc.</u>, 307 F.3d 775, 780 (9th Cir. 2002).  The primary jurisdiction doctrine "permits judicial deference to administrative expertise." <u>Bradley v. CVS Pharm., Inc.</u>, 64 Cal.App.5th 902, 912 (2021).  However, the doctrine does not "'require[] that all claims within an agency's purview . . . be decided by the agency,'" and is not "intended to 'secure expert advice' for the courts from regulatory agencies every time a court is presented with an issue conceivably within the agency's ambit.'" <u>Syntek</u>, 307 F.3d at 780 (quoting <u>Brown v. MCI WorldCom Network Servs., Inc.</u>, 277 F.3d 1166, 1172 (9th Cir. 2002)).  Instead, it is a "'doctrine used by the courts to allocate initial decisionmaking responsibility between agencies and courts where such [jurisdictional] overlaps and potential for conflicts exist.'" <u>Id.</u> (quoting Richard J. Pierce, Jr., <u>Administrative Law Treatise</u> § 14.1, p. 917 (4th ed. 2002)).

The Court need not decline jurisdiction under this doctrine.  Whether the head gasket affects any regulated emission is not "a particularly complicated issue." <u>Beligan v. Mercedes Benz USA, LLC</u>, No. CV 22-02035-DFM, 2023 WL 3150113, at *6 (C.D. Cal. Feb. 15, 2023).  Because CARB allows vehicle manufacturers to unilaterally identify and supply a list of warranted parts, CARB does not require expert advice or regulatory consent to determine which parts are emissions related and thus require coverage under the

California Emission Warranty.  <u>See</u> <u>id</u>.

For these reasons, the Court does not decline the case based on primary jurisdiction or abstention.

## IV.      CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to dismiss <u>only as to the injunctive relief</u>, and DENIES it in all other respects.  The Court gives Aguirre leave to amend his complaint as to the injunctive relief, if he wishes to do so, within thirty days.

**IT IS SO ORDERED.**

Dated: July 17, 2023



_____
CHARLES R. BREYER
United States District Judge