UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ELIAS MORALES AGUIRRE,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN HONDA MOTOR CORPORATION, INC.,<br><br>Defendant. | Case No. 22-cv-06909-HSG<br><br>**ORDER DENYING MOTION FOR CLASS CERTIFICATION**<br><br>Re: Dkt. No. 57 |

Pending before the Court is Plaintiff's motion for class certification.  Dkt. No. 57 ("Mot."); Dkt. No. 65 ("Opp."); Dkt. No. 69 ("Reply"); Dkt. No. 78 ("Sur-Reply").[1]  The Court held a hearing on the motion, Dkt. No. 81 ("Tr."), and now **DENIES** it.

## I.  BACKGROUND

Plaintiff Jose Elias Morales Aguirre owned a Honda Partial Zero Emissions Vehicle ("PZEV"), which began malfunctioning two years after purchase at a mileage of 127,530 miles. Dkt. No. 35 ("SAC") ¶¶ 58–59.  Technicians at a Honda repair facility determined that the head gasket was blown, and Plaintiff paid a total of $3,267 for the necessary diagnosis and repairs.  *See id.* ¶¶ 60–63.[2]

After Plaintiff paid for the repairs, he retained counsel, who sent a letter to Defendant American Honda Motor Corporation, Inc. ("AHM") requesting that it cover the repairs under the California Emissions Warranty because the head gasket is an emissions-related part.  *Id.* ¶ 64.

---

[1] The Court allowed Defendant to file a sur-reply to address evidentiary objections and Plaintiff's revised class definition.  Dkt. No. 77.

[2] The head gasket "sits between the cylinder head and the block" in an internal combustion engine, and "[i]ts job is to seal the two mating surfaces of the top and bottom halves of the engine."  SAC ¶ 70.

California Health and Safety Code § 43200 authorizes the California Air Resources Board ("CARB") to promulgate regulations for vehicle emissions, including the "California Emissions Warranty." *See id.* ¶ 11. That warranty consists of two relevant parts: the Defects Warranty, 13 C.C.R. § 2037, and the Performance Warranty, 13 C.C.R. § 2038. *See id.* ¶¶ 22, 27. These warranties extend coverage to fifteen years or 150,000 miles for certain PZEVs. 13 C.C.R. § 1962.1(c)(2)(D); SAC ¶ 30. Plaintiff alleges that the head gasket qualifies as an emissions-related part that should be covered by these extended warranties. SAC ¶¶ 79–82. But Defendant allegedly refused Plaintiff's request to reimburse him under these provisions, stating that "the head gasket is not a component that is covered by the Emissions Warranty." *See id.* ¶ 64.

Now, Plaintiff brings this putative class action against Defendant on behalf of a multistate and California class of PZEV owners and lessees. *Id.* ¶ 143. He argues that Defendant violated California Business and Professions Code § 17200, *et seq.* (the "UCL"), by failing to identify the head gasket as an emissions-related part. SAC ¶¶ 126, 150–71. He seeks injunctive and declaratory relief, as well as "reimbursement or restitution for out-of-pocket expenses, including diagnostic fees for amounts wrongfully paid by Plaintiff and members of the Classes relating to head gasket repairs that should have been covered." *Id.* ¶¶ 144–45.

Judge Breyer previously granted in part and denied in part Defendant's motion to dismiss in July 2023. Most notably, Judge Breyer (1) dismissed Plaintiff's claims for prospective injunctive relief, but granted leave to amend in light of counsel's representation that Plaintiff could allege that another "head gasket malfunction is likely or certainly impending"; and (2) found Plaintiff had adequately pleaded that he lacked an adequate remedy at law such that the Court had equitable jurisdiction. Dkt. No. 33 ("MTD Order") at 17, 20.[3]

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 23(a) provides that a district court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative

---

[3] The case was reassigned to the undersigned judge in March 2024. Dkt. No. 44.

*United States District Court*
*Northern District of California*

parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. Proc. 23(a).  That is, the class must satisfy the requirements of numerosity, commonality, typicality, and adequacy of representation to maintain a class action.  *See Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022).

If the four prerequisites of Rule 23(a) are met, a court also must find that the plaintiff "satisf[ies] through evidentiary proof" one of the three subsections of Rule 23(b).  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).  Rule 23(b)(3) applies where there is both "predominance" and "superiority," meaning "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. Proc. 23(b)(3).  To determine whether a putative class action satisfies the requirements of Rule 23(b)(3), courts consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. Proc. 23(b)(3)(A)–(D).  Plaintiff, as the party seeking certification, "must affirmatively demonstrate" his compliance with Rule 23 by a preponderance of the evidence.  *See White v. Symetra Assigned Benefits Serv. Co.*, 104 F.4th 1182, 1192 (9th Cir. 2024) (quotation omitted).  To do so, Plaintiff "must actually *prove*—not simply plead—that [his] proposed class satisfies each requirement of Rule 23, including (if applicable) the predominance requirement of Rule 23(b)(3)."  *Id.* (quotation omitted) (emphasis in original).

United States District Court
Northern District of California

### III.   DISCUSSION

Defendant raises several challenges to the Court's jurisdiction, Opp. at 15–26, which the Court addresses first.  The Court then considers the predominance requirement for Plaintiff's damages class.

#### A.   Exhaustion

Defendant argues that the Court lacks jurisdiction because Plaintiff did not exhaust his administrative remedies under 13 C.C.R. § 2041, and the issue is not ripe for judicial determination.  Opp. at 16.  The basic rule of exhaustion "is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." *Campbell v. Regents of Univ. of California*, 35 Cal. 4th 311, 321 (2005) (quotation omitted).  Defendant concedes that the "Warranty Regulations are silent as to whether exhaustion is required," but argues that an exhaustion requirement applies under California state precedent.  *Id.*

The regulations state that "[a] vehicle or engine owner may request that the Executive Officer[4] mediate a warranty claim."  13 C.C.R. § 2041(b).  "Upon examination of the facts submitted by the parties concerned, the Executive Officer . . . may find that a warranted part, or a vehicle's nonconformity with any California statutorily authorized motor vehicle emissions inspection and maintenance program, is eligible for warranty coverage pursuant to this article.  If such a finding is made, the Executive Officer shall issue a Finding of Warrantable Condition." *Id.* § 2041(b)(2).  "This section is intended to provide a mechanism for mediating unresolved emissions warranty disputes between vehicle or engine owners and manufacturers or their agents." *Id.* § 2041(a).

The Court finds that exhaustion is not required here because the administrative remedy is "unavailable or inadequate." *Ramos v. Cnty. of Madera*, 4 Cal. 3d 685, 691 (1971) (quotation omitted).  First, Plaintiff is no longer "[a] vehicle or engine owner," so it is not clear that he can still use this regulatory mechanism.  13 C.C.R. § 2041(b); Reply at 12 (stating Plaintiff sold his car

---

[4] This refers to CARB's Executive Officer.  *Cf.* 13 C.C.R. § 2180.1(a)(14).

in 2022). Second, the regulation states that the Executive Officer may find that "*a warranted part . . . is eligible for warranty coverage pursuant to this article.*" 13 C.C.R. § 2041(b)(2) (emphasis added). This does not appear to give the Executive Officer authority to determine that an unwarranted part should have been listed as warranted in the first place. The Court cannot identify any cases that suggest Plaintiff could use this regulatory mechanism to achieve anything like the remedy he seeks here.

In addition, "[i]f the remedies do not provide class-wide relief, then no plaintiff need exhaust them before suing." *Tarkington v. Cal. Unemployment Ins. Appeals Bd.*, 172 Cal. App. 4th 1494, 1510 (2009); *Ass'n for L.A. Deputy Sheriffs v. Cnty. of L.A.*, 42 Cal. App. 5th 918, 931–32 (2019) (same). Here, Defendant has not introduced any evidence that "appeals from individual [car owners] had the power to affect an entire class of [owners]," *Tarkington*, 172 Cal. App. 4th at 1510, and the regulation's language suggests the Findings of Warrantable Condition apply only to individual owners and vehicles, *see* 13 C.C.R. § 2041(a), (b)(3). *Contrast Lopez v. Civ. Serv. Com.*, 232 Cal. App. 3d 307, 313 (1991) (requiring exhaustion where "records of the Commission . . . confirm that the Commission regularly hears appeals from individual employees on matters which affect the entire class to which they belong"). Accordingly, the Court finds that Plaintiff was not required to exhaust any potential remedies under 13 C.C.R. § 2041 before bringing his claims here.

**B.  Standing**

Standing "is a jurisdictional element that must be satisfied prior to class certification." *Lee v. State of Or.*, 107 F.3d 1382, 1390 (9th Cir. 1997), *as amended* (Mar. 21, 1997), *as amended* (Apr. 16, 1997) (quotation omitted). "On a motion for class certification, this means a plaintiff must show standing through evidentiary proof." *Rivera v. Invitation Homes, Inc.*, No. 18-CV-03158-JSW, 2022 WL 504161, at *5 (N.D. Cal. Feb. 18, 2022).

**i.  Injunctive/Declaratory Relief**

Defendant argues that Plaintiff lacks standing to represent all class members, including current owners and lessees. Opp. at 21–26. In reply, Plaintiff modifies his class definitions so that the Rule 23(b)(2) and 23(c)(4) classes only include "current owners and lessees of AHM PZEV

vehicles." Dkt. No. 70 ¶ 15. In doing so, Plaintiff has written himself out of these classes, as it is undisputed that he sold his vehicle in 2022, and he does not claim to have purchased another. Reply at 12; *see Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981) (noting "the fundamental requirement that the representative plaintiff must be a member of the class he represents").[5]

In addition, Plaintiff lacks standing to pursue prospective injunctive relief. To pursue injunctive relief, a plaintiff must plead a "threat of injury [that is] actual and imminent, not conjectural or hypothetical." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (quotation omitted). Plaintiff does not currently own a Honda vehicle that could be impacted by Defendant's warranties, but he claims that he "would again purchase another AHM vehicle, if the alleged unlawful practices are corrected through the relief sought," and "absent the requested injunctive relief, he will not know whether it makes sense to spend money on another AHM vehicle on account of its noncompliance with the Emissions Warranty." Mot. at 23. He claims he is "unable to rely on AHM's compliance with the requirements of the Emissions Warranty." *Id.* at 24.

As Judge Breyer already observed when originally dismissing the injunctive relief claim, Plaintiff "will be able to rely on AHM's application for certification by CARB to determine whether AHM covers the head gasket under the California Emissions Warranty." MTD Order at 19. *Davidson* found standing for prospective injunctive relief in a false advertising case where a consumer wanted to purchase a product again, but would either be "unable to rely on the product's advertising or labeling in the future" or "may reasonably, but incorrectly, assume the product was improved." 889 F.3d at 969–70. Prospective injunctive relief remedied the problem created where "[k]nowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future." *Id.* at 769. In contrast, Plaintiff will be able to

---

[5] While "[d]istrict courts have broad discretion to modify class definitions," *Nevarez v. Forty Niners Football Co., LLC*, 326 F.R.D. 562, 575 (N.D. Cal. 2018) (quotation omitted); Fed. R. Civ. Proc. 23(c)(1)(C), the Court will not attempt to reconcile Plaintiff's proposed class definitions with Defendant's overbreadth arguments given another underlying problem with standing.

see if Defendant lists allegedly emissions-related parts like the head gasket as warranted parts in the future, *see* SAC ¶ 55, and the issue was never that Defendant listed a part as warranted but then refused to honor the warranty.[6]  To the extent Plaintiff's theory is that he wishes to buy a car but cannot because he may one day have a head gasket failure during the warranty period that he would not be reimbursed for, this "relies on [too] highly attenuated [a] chain of possibilities." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013).[7]  Thus, the Court **DENIES** the motion with respect to the 23(b)(2) and 23(c)(4) classes.[8]

### ii.    Restitution

Defendant also argues that Plaintiff lacks standing to seek retrospective restitution.  Opp. at 18.  Plaintiff claims he has standing "because he lost money when he paid out of pocket as a result of AHM's failure to identify the head gasket as a warranted part."  Reply at 15.  Standing requires a plaintiff to have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016).  The parties do not seriously dispute that out-of-pocket repairs constitute an injury in fact or that an order of restitution by this Court can redress that harm.  Instead, Defendant argues that Plaintiff must "submit evidence establishing that, if the head gasket were a warranted part, his replacement would have been covered under warranty" to establish causation.  Opp. at 18.

On one hand, the Court agrees with Defendant that "failure of a warranted part does not

---

[6] If Plaintiff is claiming that he can't trust Defendant's warranty compliance after it lists the head gasket as a warranted part, then a court order requiring it to list the part will not remedy Plaintiff's injury, either.

[7] Plaintiff also suggests that he faces a "continuing and ongoing" harm because "he is breathing polluted and unhealthy air as a result of Defendant's violation of the emissions laws and by not covering the [head gasket] under warranty."  Mot. at 24–25.  Besides being too speculative and attenuated, this theory is not particularized and would give anyone standing to bring this action.

[8] It's worth noting that a significant reason why Judge Breyer granted Plaintiff leave to amend his claim for injunctive relief is because Plaintiff's counsel represented that Plaintiff's mileage was still below 150,000 miles in 2023, so Plaintiff could "plausibly allege that a head gasket malfunction [was] likely or certainly impending."  MTD Order at 20.  Plaintiff's own briefing suggests that representation was untrue, since Plaintiff had sold the car almost a year prior.  Reply at 12.  Counsel must not repeat this type of apparent misstep.

United States District Court
Northern District of California

mean warranty coverage is automatic" under 13 C.C.R. §§ 2037(b) and 2038(b). *Id.* The Defects Warranty states, for example, that "[t]he manufacturer of each motor vehicle or motor vehicle engine shall warrant . . . that the vehicle or engine is: . . . [f]ree from defects in materials and workmanship which cause the failure of a warranted part to be identical in all material respects to the part as described in the vehicle or engine manufacturer's application for certification, including any defect in materials or workmanship which would cause the vehicle's on-board diagnostic malfunction indicator light to illuminate." 13 C.C.R. § 2037(b)(2).[9] The Performance Warranty states that "[t]he manufacturer of each passenger car . . . shall warrant . . . that the vehicle or engine . . . [w]ill, for a period of [fifteen years or 150,000 miles], whichever first occurs, pass an inspection established under section 44012 of the Health and Safety Code." *Id.* § 2038(b); *id.* § 1962.1(c)(2)(D).[10] Both provisions also exclude repair or replacement of any warranted part when "the vehicle or engine manufacturer demonstrates that the vehicle or engine has been abused, neglected, or improperly maintained, and that such abuse, neglect, or improper maintenance was the direct cause of the need for the repair or replacement of the part." *Id.* § 2037(i); *see also id.* § 2038(d)(1). In other words, while both regulations require that Defendant must provide coverage for warranted parts in some circumstances,[11] the actual warranty coverage has limits.

On the other hand, Defendant overstates the causation requirement. For Article III causation, the injury must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Bennett v. Spear*, 520 U.S. 154, 167 (1997). While the "line of causation between the defendant's action and the

---

[9] It also requires that a vehicle or engine is "[d]esigned, built and equipped so as to conform with all applicable regulations adopted by the Air Resources Board," but the parties don't discuss this provision. 13 C.C.R. § 2037(b)(1).

[10] This allegedly requires that the vehicle will pass a smog test. SAC ¶ 27.

[11] When these conditions are met, "[r]epair or replacement of any warranted part under the warranty provisions of this article shall be performed at no charge to the vehicle or engine owner at a warranty station," and "[t]he manufacturer shall reimburse the owner for his or her expenses including diagnostic charges for such emergency repair or replacement." *See, e.g.*, 13 C.C.R. § 2037(d)(4).

plaintiff's harm must be more than attenuated," standing does not "require the defendant's action to be the sole source of injury." *Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1141–42 (9th Cir. 2013) (quotation omitted). "[T]he causal connection put forward for standing purposes cannot be too speculative, or rely on conjecture about the behavior of other parties, but need not be so airtight at this stage of litigation as to demonstrate that the plaintiffs would succeed on the merits." *Ocean Advocs. v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 860 (9th Cir. 2005) (quotation omitted). There is "no requirement that the defendant's conduct comprise the last link in the chain." *Mendia v. Garcia*, 768 F.3d 1009, 1012 (9th Cir. 2014).

Plaintiff has met this standard. Plaintiff has introduced evidence showing that he sent a letter to Defendant asking it to reimburse his costs. Dkt. No. 69-14 at 6. Defendant refused, stating that, "[b]ased on the current information available, we determined and confirmed that the head gasket is not a component that is covered by the Emissions Warranty." Dkt. No. 69-15 at 2; *see also* SAC ¶ 64. This evidence plausibly suggests that Defendant's allegedly unlawful choice not to list the head gasket as an emissions-related part was a but-for cause of Plaintiff's injury.[12] The Court does not need to conclude that Plaintiff certainly would have been reimbursed if the head gasket had been listed. *See Barnum Timber Co. v. EPA,* 633 F.3d 894, 901 (9th Cir.2011) (holding that a plaintiff "need not eliminate any other contributing causes to establish . . . standing"); *Moore v. Apple Inc.*, 309 F.R.D. 532, 540 (N.D. Cal. 2015) (finding plaintiff did "not need to prove at this stage that [defendant's conduct was] the sole source of her injury" (quotation omitted)).[13]

---

[12] Plaintiff also argues that "Dublin Honda apparently denied coverage solely because the head gasket was not covered under the Warranty and not for any other reason." Reply at 10. Plaintiff has not identified any evidence that supports this assertion about Dublin Honda's actions. *See* Dkt. No. 57-7 (Dublin repair records).

[13] The Court does not address Defendant's other standing-related arguments, including whether Plaintiff has standing to represent lessees or can bring a UCL claim on behalf of class members in other states. Opp. at 21–26. These are "question[s] of class certification—i.e., whether the named plaintiffs are adequate representatives of the claims of the unnamed plaintiffs—not [questions] of standing." *Melendres v. Arpaio*, 784 F.3d 1254, 1262–63 (9th Cir. 2015). The Court defers these remaining non-jurisdictional questions given the problems with predominance described below.

### iii. Equitable Jurisdiction

Defendant argues that the "existence of [an] administrative remedy (among other available legal remedies), establishes that [Plaintiff] has an adequate legal remedy, which precludes pursuing equitable claims." Opp. at 17; *see also id.* at 31 (discussing this in the context of adequacy, and mentioning Cal. Civ. Code § 1794 as one possible remedy). "In order to entertain a request for equitable relief, a district court must have equitable jurisdiction, which can only exist under federal common law if the plaintiff has no adequate legal remedy." *Guzman v. Polaris Indus.*, 49 F.4th 1308, 1313 (9th Cir. 2022). Plaintiff alleges several explanations for why equitable relief is necessary, SAC ¶¶ 92–113, and Judge Breyer previously credited several of these when denying Defendant's motion to dismiss for lack of equitable jurisdiction, MTD Order at 17. Most of these allegations explain why injunctive relief, as opposed to restitution, is necessary, and the Court is skeptical that it ultimately will have equitable jurisdiction over a restitution claim premised on compensating out-of-pocket repair costs. But the parties barely address this argument, so the Court will not rule on it for now.[14] If Defendant seeks to challenge the Court's equitable jurisdiction again, it should more fully explain (1) what the adequate legal remedy is; and (2) what the standard for establishing equitable jurisdiction is at the class certification stage, if relevant.

### C. Predominance

While Plaintiff has introduced sufficient evidence to establish individual standing, he has not adequately demonstrated that common issues predominate over individual issues. The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotation omitted). When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some

---

[14] Plaintiff explains why he might be an adequate representative even if he chose not to pursue a damages class, Reply at 14, but he does not explain why the Court has jurisdiction over the restitution claim in the first instance.

affirmative defenses peculiar to some individual class members." *Id.* (quotation omitted). The Supreme Court has defined an individual question as "one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (quotation omitted). This "inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.* (quotation omitted).

The Supreme Court has made clear that Rule 23(b)(3)'s predominance requirement is "even more demanding" than the commonality requirement of Rule 23(a). *See Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). In short, "Rule 23(a)(2) asks whether there are issues common to the class," and "Rule 23(b)(3) asks whether these common questions predominate." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quotation omitted).

There are undoubtedly common and substantial questions here, such as whether Defendant was legally required to list the head gasket as an emissions-related part. However, that does not end the inquiry, because "Rule 23 also requires a district court to determine whether individualized inquiries into [a] standing issue would predominate over common questions." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 668 n.12 (9th Cir. 2022). Plaintiff introduced evidence that Defendant told him it would not warrant his head gasket because it was not a warranted part, but he has not offered or discussed any class-wide evidence capable of establishing this same fact for other members of the class. Put another way, Plaintiff hasn't explained at all what class-wide proof would be capable of addressing Defendant's conduct or the potential chain of causation.[15] Instead, Plaintiff asks the Court to infer that class members'

---

[15] Plaintiff comes closest through deposition testimony from CARB's Branch Chief stating that Defendant told him "Honda looks at the head [gasket] as hardware. And Honda has the interpretation that hardware is or was or should be excluded from the California Emissions Warranty based on past practices." Dkt. No. 57-4 at 4 (discussed in Mot. at 11). That noncommittal statement about Defendant's view on warranting this part is not the same as class-wide proof that it denied coverage for class members because the head gasket was not listed as a warranted part.

Plaintiff also introduced deposition testimony from Defendant's PMK stating that "Honda's [warranty] process does not include basic mechanical components because we believe . . . [CARB]

out-of-pocket payments are fairly traceable to Defendant's conduct solely from statutory language that suggests that Defendant would have sometimes needed to reimburse repairs had the head gasket been a warranted part.

It is Plaintiff's burden to "prove—not simply plead—that their proposed class satisfies each requirement of Rule 23 by a preponderance of the evidence." *Small v. Allianz Life Ins. Co. of N. Am.*, 122 F.4th 1182, 1197 (9th Cir. 2024) (quotation omitted); *see also Black Lives Matter L.A. v. City of L.A.*, 113 F.4th 1249, 1258 (9th Cir. 2024) (noting that "plaintiffs cannot plead their way to class certification through just allegations and assertions"). Without some minimum class-wide proof capable of addressing the causal chain, a purported class action would devolve into thousands of individual inquiries as to whether the alleged injuries were fairly traceable to the purported misconduct Plaintiff alleges (failure to list the part) as opposed to another cause (for example, disqualifying conduct by individual car owners).[16] Given the sparse record here, the Court is not "satisfied, after a rigorous analysis," that the prerequisites of Rule 23 have been met. *Olean*, 31 F.4th at 664 (quotation omitted).

Plaintiff may be able to overcome this burden. For example, Plaintiff could explain how he will use class-wide proof to show that engines with a head gasket failure would necessarily fail a smog test and qualify for warranty coverage under 13 C.C.R. § 2038(b).[17] Plaintiff may also

_____

specifically excluded basic mechanical components for emissions defect warranty coverage." Dkt. No. 57-3 at 10. But that testimony does not explain if a head gasket is considered a basic mechanical part.

[16] Plaintiff argues that exclusion from warranty coverage relates only to the amount of damages and "would be part of the post-certification claims process." *See* Reply at 8. But Plaintiff proposes employing a claims process to do more than just crunch numbers: he wants to use it to elide inherently individualized questions of standing.

Plaintiff also cites to *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979 (9th Cir. 2015), which held that "a court need not make individual determinations regarding entitlement to restitution," which "is available on a class[-]wide basis once the class representative makes the threshold showing of liability under the UCL." *Id.* at 986. The lower court had been concerned about how to "exclude from Plaintiffs' proposed class the many advertisers who have no legal claim to restitution because they derived direct economic benefits from" unlawfully placed ads. *Id.* at 984. The Court is not suggesting that predominance is defeated because some class members may not be entitled to any restitution. Instead, the Court is concerned by the lack of any proffered class-wide evidence supporting Plaintiff's causal theory for anyone other than himself.

[17] Plaintiff suggests this may be the case in his complaint, SAC ¶¶ 90–91, but offers no evidence

United States District Court
Northern District of California

United States District Court
Northern District of California

have policy documents or deposition testimony showing that Defendant always declined head gasket repairs because the head gasket was not an emissions-related part. But under Rule 23, it is Plaintiff's burden, not the Court's obligation, to explain how Article III standing is susceptible to class-wide proof and back up that theory with evidence. Plaintiff has not met that burden here.[18]

## IV.   CONCLUSION

The Court **DENIES** the motion for class certification. Dkt. No. 57.

The Court further **SETS** a case management conference in this case on March 31, 2026, at 2:00 p.m. The hearing will be held by Public Zoom Webinar. All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/hsg. All attorneys and pro se litigants appearing for the case management conference are required to join at least 15 minutes before the hearing to check in with the courtroom deputy and test internet, video, and audio capabilities. The Court **DIRECTS** the parties to meet and confer and file a joint case management statement by March 24, 2026.

**IT IS SO ORDERED.**

Dated:   3/4/2026

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

supporting that claim in his motion for class certification.

[18] Plaintiff also asks the Court to certify a 23(c)(4) class for the restitution claims. While "predominance [is] not required for certifying a class under Rule 23(c)(4)," the Court will not certify a restitution-based 23(c)(4) class at this time given the Court's remaining concerns that "numerous individualized issues affecting determinations of liability [will] make Rule 23(c)(4) certification inefficient." *Reitman v. Champion Petfoods USA, Inc.*, 830 F. App'x 880, 882 (9th Cir. 2020) (unpublished case which the Court relies on only for its persuasive value).