United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ELIAS MORALES AGUIRRE,<br>Plaintiff,<br>v.<br>AMERICAN HONDA MOTOR CORPORATION, INC.,<br>Defendant. | Case No. 22-cv-06909-HSG<br>**ORDER DENYING RENEWED MOTION FOR CLASS CERTIFICATION**<br>Re: Dkt. No. 91 |

Pending before the Court is Plaintiff's renewed motion for class certification. Dkt. No. 91 ("Mot."); Dkt. No. 97 ("Opp."). The Court finds this matter appropriate for disposition without oral argument and the motion is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons discussed below, the Court **DENIES** the motion.

## I. BACKGROUND

Plaintiff Jose Elias Morales Aguirre owned a Honda Partial Zero Emissions Vehicle ("PZEV"), which began malfunctioning two years after purchase at a mileage of 127,530 miles. Dkt. No. 35 ("SAC") ¶¶ 58–59. Technicians at a Honda repair facility determined that the head gasket was blown, and Plaintiff paid a total of $3,267 for the necessary diagnosis and repairs. *See id.* ¶¶ 60–63.[1]

After Plaintiff paid for the repairs, he retained counsel, who sent a letter to Defendant American Honda Motor Corporation, Inc. ("AHM") requesting that it cover the repairs under the California Emissions Warranty because the head gasket is an emissions-related part. *Id.* ¶ 64.

[1] The head gasket "sits between the cylinder head and the block" in an internal combustion engine, and "[i]ts job is to seal the two mating surfaces of the top and bottom halves of the engine." SAC ¶ 70.

California Health and Safety Code § 43200 authorizes the California Air Resources Board ("CARB") to promulgate regulations for vehicle emissions, including the "California Emissions Warranty." *See id.* ¶ 11. That warranty consists of two relevant parts: the Defects Warranty, 13 C.C.R. § 2037, and the Performance Warranty, 13 C.C.R. § 2038. *See id.* ¶¶ 22, 27. These warranties extend coverage to fifteen years or 150,000 miles for certain PZEVs. 13 C.C.R. § 1962.1(c)(2)(D); SAC ¶ 30. Plaintiff alleges that the head gasket qualifies as an emissions-related part that should be covered by these extended warranties. SAC ¶¶ 79–82. But Defendant allegedly refused Plaintiff's request to reimburse him under these provisions, stating that "the head gasket is not a component that is covered by the Emissions Warranty." *See id.* ¶ 64.

Now, Plaintiff brings this putative class action against Defendant on behalf of a multistate and California class of PZEV owners and lessees. *Id.* ¶ 143. He argues that Defendant violated California Business and Professions Code § 17200, *et seq.* (the "UCL") by failing to identify the head gasket as an emissions-related part. SAC ¶¶ 126, 150–71. Plaintiff originally sought injunctive and declaratory relief, as well as "reimbursement or restitution for out-of-pocket expenses, including diagnostic fees for amounts wrongfully paid by Plaintiff and members of the Classes relating to head gasket repairs that should have been covered." *Id.* ¶¶ 144–45.

However, the Court denied Plaintiff's first motion for class certification, finding that Plaintiff lacks standing to pursue his injunctive and declaratory relief claims and had not adequately demonstrated that common issues predominate over individualized issues for the damages class. *See generally* Dkt. No. 82 ("Order"). The Court granted Plaintiff leave to file a renewed motion for class certification, but limited the scope of the filing to "(1) the predominance evidence that the Court previously found lacking"; and (2) "whether the Court has equitable jurisdiction over Plaintiff's restitution claim." Dkt. No. 88.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 23(a) provides that a district court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will

fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). That is, the class must satisfy the requirements of numerosity, commonality, typicality, and adequacy of representation to maintain a class action. *See Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022).

If the four prerequisites of Rule 23(a) are met, a court also must find that the plaintiff "satisf[ies] through evidentiary proof" one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Rule 23(b)(3) applies where there is both "predominance" and "superiority," meaning "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To determine whether a putative class action satisfies the requirements of Rule 23(b)(3), courts consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D). Plaintiff, as the party seeking certification, "must affirmatively demonstrate" his compliance with Rule 23 by a preponderance of the evidence. *See White v. Symetra Assigned Benefits Serv. Co.*, 104 F.4th 1182, 1192 (9th Cir. 2024) (quotation omitted). To do so, Plaintiff "must actually *prove*—not simply plead—that [his] proposed class satisfies each requirement of Rule 23, including (if applicable) the predominance requirement of Rule 23(b)(3)." *Id.* (quotation omitted) (emphasis in original).

## III. DISCUSSION

Plaintiff still has not adequately proven that his proposed class satisfies the predominance

United States District Court
Northern District of California

requirement. The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotation omitted). When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* (quotation omitted). The Supreme Court has defined an individual question as "one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (quotation omitted). This "inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.* (quotation omitted).

The Supreme Court has made clear that Rule 23(b)(3)'s predominance requirement is "even more demanding" than the commonality requirement of Rule 23(a). *See Comcast*, 569 U.S. at 34. In short, "Rule 23(a)(2) asks whether there are issues common to the class," and "Rule 23(b)(3) asks whether these common questions predominate." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quotation omitted).

In its order denying class certification, the Court previously explained that Plaintiff had not met his burden to adequately demonstrate predominance:

> There are undoubtedly common and substantial questions here, such as whether Defendant was legally required to list the head gasket as an emissions-related part. However, that does not end the inquiry, because "Rule 23 also requires a district court to determine whether individualized inquiries into [a] standing issue would predominate over common questions." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 668 n.12 (9th Cir. 2022). Plaintiff introduced evidence that Defendant told him it would not warrant his head gasket because it was not a warranted part,[2] but he

[2] For individual standing, Plaintiff had "introduced evidence showing that he sent a letter to Defendant asking it to reimburse his [repair] costs." Order at 9 (citing Dkt. No. 69-14 at 6). "Defendant refused, stating that, '[b]ased on the current information available, we determined and confirmed that the head gasket is not a component that is covered by the Emissions Warranty.'" *Id.* (citing Dkt. No. 69-15 at 2). While the Court did "not need to conclude that Plaintiff certainly would have been reimbursed if the head gasket had been listed," this "evidence plausibly

> has not offered or discussed any class-wide evidence capable of establishing this same fact for other members of the class. Put another way, Plaintiff hasn't explained at all what class-wide proof would be capable of addressing Defendant's conduct or the potential chain of causation. Instead, Plaintiff asks the Court to infer that class members' out-of-pocket payments are fairly traceable to Defendant's conduct solely from statutory language that suggests that Defendant would have sometimes needed to reimburse repairs had the head gasket been a warranted part.
>
> It is Plaintiff's burden to "prove—not simply plead—that [his] proposed class satisfies each requirement of Rule 23 by a preponderance of the evidence." *Small v. Allianz Life Ins. Co. of N. Am.*, 122 F.4th 1182, 1197 (9th Cir. 2024) (quotation omitted); *see also Black Lives Matter L.A. v. City of L.A.*, 113 F.4th 1249, 1258 (9th Cir. 2024) (noting that "plaintiffs cannot plead their way to class certification through just allegations and assertions"). Without some minimum class-wide proof capable of addressing the causal chain, a purported class action would devolve into thousands of individual inquiries as to whether the alleged injuries were fairly traceable to the purported misconduct Plaintiff alleges (failure to list the part) as opposed to another cause (for example, disqualifying conduct by individual car owners).[3] Given the sparse record here, the Court is not "satisfied, after a rigorous analysis," that the prerequisites of Rule 23 have been met. *Olean*, 31 F.4th at 664 (quotation omitted).
>
> Plaintiff may be able to overcome this burden. For example, Plaintiff could explain how he will use class-wide proof to show that engines with a head gasket failure would necessarily fail a smog test and qualify for warranty coverage under 13 C.C.R. § 2038(b). Plaintiff may also have policy documents or deposition testimony showing that Defendant always declined head gasket repairs because the head gasket was not an emissions-related part. But under Rule 23, it is Plaintiff's burden, not the Court's obligation, to explain how Article III standing is susceptible to class-wide proof and back up that theory with evidence. Plaintiff has not met that burden here.

Order at 11–13.

Plaintiff now renews his motion for class certification, arguing that he has provided "the exact evidence suggested by the Court that demonstrates predominance on a class-wide basis."

---

suggest[ed] that Defendant's allegedly unlawful choice not to list the head gasket as an emissions-related part was a but-for cause of Plaintiff's injury." *Id.*

[3] As the Court previously explained, warranty coverage is not automatic under 13 C.C.R. §§ 2037(b) and 2038(b). Order at 7–8. "The Defects Warranty states, for example, that '[t]he manufacturer of each motor vehicle or motor vehicle engine shall warrant . . . that the vehicle or engine is: . . . [f]ree from defects in materials and workmanship which cause the failure of a warranted part to be identical in all material respects to the part as described in the vehicle or engine manufacturer's application for certification, including any defect in materials or workmanship which would cause the vehicle's on-board diagnostic malfunction indicator light to illuminate.'" *Id.* at 8 (quoting 13 C.C.R. § 2037(b)(2)).

Mot. at 3. Specifically, Plaintiff cites testimony from Defendant's 30(b)(6) deponent, who testified that "to my knowledge [the head gasket has] never been included in Honda's emissions parts list for any model at any time." *Id.* at 4 (quoting Dkt. No. 91-2 at 3). As a result, Plaintiff argues that common questions predominate because "AHM has *always* declined head gasket repairs, as a matter of policy, because AHM has never considered the head gasket to be an emissions-related part in the first place," and "all Class members were injured or harmed in the same way by AHM's uniform conduct in that they all paid out of pocket to diagnose and/or repair the head gasket that should have been covered under the Emissions Warranty in the first place." *Id.* (emphasis in original).

As before, "Plaintiff asks the Court to infer that class members' out-of-pocket payments are fairly traceable to Defendant's conduct solely from statutory language that suggests that Defendant would have sometimes needed to reimburse repairs had the head gasket been a warranted part." Order at 11–12. Plaintiff's "new" testimony simply confirms that Honda did not list the head gasket as an emissions-related part. Plaintiff already offered that evidence in its original motion. For example, Plaintiff originally cited testimony from CARB's Branch Chief that "Honda looks at the head [gasket] as hardware. And Honda has the interpretation that hardware is or was or should be excluded from the California Emissions Warranty based on past practices." Dkt. No. 57 at 11 (quoting Dkt. No. 57-4 at 4). As the Court explained, "[t]hat noncommittal statement about Defendant's view on warranting this part is not the same as class-wide proof that it denied coverage for class members because the head gasket was not listed as a warranted part." Order at 11 n.15.[4] Plaintiff's newest evidence more directly states that the head gasket has always been excluded from Honda's emissions-related parts list (rather than "is or was or should be excluded"), but that does not explain how Plaintiff will show with common, class-wide evidence that "the alleged injuries were fairly traceable to the purported misconduct Plaintiff alleges (failure to list the part) as opposed to another cause (for example, disqualifying conduct by individual car owners)." *Id.* at 12. And it is not the evidence that the Court requested in the form of "policy

[4] Plaintiff cites this same testimony again in his renewed motion, Mot. at 5, but he does not explain why the Court should view it any differently the second time.

United States District Court
Northern District of California

documents or deposition testimony showing that Defendant always declined head gasket repairs *because* the head gasket was not an emission-related part." *Id.* at 13 (emphasis added).

Notably, this evidence is distinct from Plaintiff's individualized evidence of standing: he offered evidence that he requested a refund for a head gasket repair, and Honda declined to provide that reimbursement *because* the head gasket was not a warranted part. There, the causal link is straightforward. But Plaintiff still has not explained why the Court can infer from the fact that the part is not included in the emissions-related parts list that all related repair costs have a sufficient causal connection to that failure to list, as opposed to some other cause. Absent some common evidence demonstrating how causation would be established, Plaintiff has not adequately demonstrated that these important standing issues can be demonstrated on a class-wide basis, rather than with the kind of individualized evidence that Plaintiff used to show his own standing.

Plaintiff's other evidence also is not compelling. Plaintiff cites testimony that "Honda does not warrant the cylinder head under the emissions defect warranty." Mot. at 4 (quoting Dkt. No. 91-2 at 7). But Plaintiff does not explain why this comment about the *cylinder head* is relevant to a determination about the *head gasket*. Elsewhere, Plaintiff suggests these two components are not the same. *See, e.g.*, Dkt. No. 57 at 9 (noting that "a head gasket is the gasket that sits between the cylinder head and the engine block"). Plaintiff also cites testimony that "the policy that was established when the emission-related part list was used for the seven year/70,000 mile high priced part excluded basic mechanical parts and did not include basic mechanical parts . . . so we believe that was the policy, and our interpretation has been, and our parts selection process has been, to exclude those basic mechanical parts." Mot. at 5 (quoting Dkt. No. 91-2 at 5). As in the previous motion, "that testimony does not explain if a head gasket is considered a basic mechanical part." Order at 11–12 n.15. It was Plaintiff's job to prove the requirements for class certification with evidentiary proof, not to rely on attorney argument and assertions. Plaintiff still has not met that burden.[5]

[5] The Court also asked the parties to brief "whether the Court has equitable jurisdiction over Plaintiff's restitution claim," Dkt. No. 88 at 2, as the Court had previously explained that it "is skeptical that it ultimately will have equitable jurisdiction over a restitution claim premised on compensating out-of-pocket repair costs," Order at 10. Defendant complains that the Court

United States District Court
Northern District of California

## IV. CONCLUSION

The Court **DENIES** the renewed motion for class certification. Dkt. No. 91.

The Court **SETS** a case management conference in this case on September 15, 2026, at 2:00 p.m. The hearing will be held by Public Zoom Webinar. All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/hsg. All attorneys and pro se litigants appearing for the case management conference are required to join at least 15 minutes before the hearing to check in with the courtroom deputy and test internet, video, and audio capabilities. The Court **DIRECTS** the parties to meet and confer and file a joint case management statement by September 8, 2026.

**IT IS SO ORDERED.**

Dated: 8/11/2026

HAYWOOD S. GILLIAM, JR.
United States District Judge

"misapprehended" its position about equitable jurisdiction, cites cases on party presentment, and suggests that "arguments regarding equitable jurisdiction and adequacy of legal remedies are irrelevant and premature at this time." Opp. at 3, 6–7; *see also* Dkt. No. 65 at 31 (Defendant's prior opposition citing *Sonner* and noting that, "by abandoning legal claims, Aguirre's equitable claims will be precluded by the existence of those adequate legal remedies"). Even if Defendant did not formally move to dismiss the restitution claims on this ground, the Court plainly may raise the issue sua sponte. *See Ruiz v. Bradford Exch., Ltd.*, 153 F.4th 907, 917–18 (9th Cir. 2025). Nevertheless, district courts do not have an independent obligation to assess equitable jurisdiction, and the Court is not certain that it lacks equitable jurisdiction at this stage, particularly where Defendant can waive any objection. *See id.* at 916, 918. As a result, the Court does not reach this issue here.